UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MODULAR DEVICES, INC.,

                           Plaintiff,                         **ORDER**
                                                                 CV 08-3267 (ARL)
      -against-

BROOKHAVEN SCIENCE ASSOCIATES, LLC,
and AEi SYSTEMS LLC,

                           Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the court is plaintiff's motion pursuant to Local Civil Rule 6.3 seeking reconsideration of the undersigned's Memorandum and Order dated March 31, 2011 which granted, in part, summary judgment to defendant Brookhaven Science Associates, LLC ("BSA") and which denied the plaintiff's cross motion for summary judgment on BSA's counterclaim. For the reasons set forth in this order, the motion for reconsideration is denied.

## DISCUSSION

      Familiarity with the background and the Court's earlier order is presumed. Plaintiff argues that the order granting summary judgment with respect to plaintiff's claim for misappropriation of trade secrets should be vacated for the following reasons: (1) the court was in error in determining that BSA had unlimited rights in the LVPS Production Unit Control Board Schematic because it was data first produced under the 66116 Contract; (2) the court was in error in determining that the LVPS Prototype Control Board Schematic was not entitled to trade secret protection; (3) the court was in error in determining that the Power Module Schematic was not entitled to trade secret protection; (4) the court was in error in determining that BSA did not improperly disclose MDI's circuit schematics to Dr. Simion that tainted his

reverse engineering of the LVPS units; and (5) the court was in error in determining that the PSBNP-1287 version of Attachment B applied to the 66116 Contract and not the PLB-1096 version. In addition, plaintiff argues that the order denying plaintiff's cross motion for summary judgment with respect to BSA's counterclaim for breach of contract should be vacated because the court did not address plaintiff's argument that BSA did not incur the costs that form the basis of its alleged damages.

Generally, a district court will not revisit its prior decision unless a party can show that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion. Local Civil Rule 6.3. The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see Medoy v. Warnaco Employees Long Term Disability Ins. Plan,* No. 97 Civ. 6612 (SJ), 2006 WL 355137 (E.D.N.Y. Feb. 14, 2006). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790)). "Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce resources." *Parrish v. Sollecito,* 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)(internal citations and quotations marks omitted). A motion for reconsideration is not an opportunity to reiterate or repackage an argument previously

rejected by the court; that argument is for appeal." *PAB Aviation, Aviation, Inc. v. United States,* N0. 98-CV-5952 JG, 2000 WL 1240196 at *1 (E.D.N.Y. Aug. 24, 2000).

None of the arguments raised by the plaintiff meet the standards for reconsideration. Rather, plaintiff's motion largely restates the arguments set forth in the underlying motion papers that were fully considered and addressed in the March 31, 2011 Memorandum and Order. It is well-established that a motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Schrader*, 70 F.3d at 257; *see Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, 96 Civ. 9015 (DAB), 2006 WL 721862 (S.D.N.Y. Mar. 22, 2006) (holding a motion for reconsideration "is not one in which a party may reargue those issues already considered when a party does not like the way the original motion was resolved") (internal quotation marks and citation omitted); *Pannonia Farms, Inc. v. USA Cable,* No. 03 Civ. 7841, 2004 WL 1794504, at *2 (S.D.N.Y. Aug. 10, 2004) (noting that reconsideration is not an opportunity to take a 'second bit at the apple' for a party dissatisfied with a court's ruling") (internal citation omitted). As discussed below, plaintiff fails to demonstrate that reconsideration is warranted and, therefore, the motion is denied.

**(1) MDI's Claim for Misappropriation of Trade Secrets**

    **(a) The LVPS Production Unit Control Board Schematic**

Plaintiff argues that the court erred in finding that the production unit control board schematic was first produced under the 66116 Contract because the court failed to consider (i) that the data contained in the schematic was developed by MDI, at private expense, before MDI entered the 66116 Contract; (ii) that BSA acknowledged that the schematics contained MDI intellectual property; (iii) that the terms of the non disclosure agreement ("NDA") supersede the

3

Data Rights Clauses in Attachment B; (iv) whether the production unit schematic was specified to be delivered; (v) that the second NDA was specifically entered between BSA and MDI in exchange for MDI's agreement to share trade secret information in the production control board schematic; and (vi) that the integration and merger clause of the second NDA controls the rights in the schematic. Plaintiff's arguments are unpersuasive.

First, contrary to plaintiff's position, the court specifically considered and rejected MDI's argument that "this schematic cannot be considered data 'first produced' in the performance of the 66116 Contract because it contains trade secrets and confidential information developed by MDI, solely at MDI's own expense, prior to MDI's work with BSA on the ATLAS program and pursuant to the Representations and Certifications to the 66116 Contract which provides, '[a]ll data previously developed at contractor's expense" qualified as limited rights data. (*Striegl Dec.*, dated May 21, 2010, ¶ 2; *Esatto II Decl.,* dated May 21, 2010, Ex. 82 at ¶ 17)." *See Memorandum and Order*, dated March 31, 2011, at 30-31. Consistent with legal principles, the court in fashioning its Order had reviewed the language of the contracts and the NDAs as a whole, giving the terms their plain meaning, and had concluded that the language of the agreements between the parties was unambiguous. The court then (i) applied the express terms and provisions of the contracts and NDAs as written to the record evidence, (ii) determined that in order for the schematic to be given limited rights protection under the agreements MDI was required to identify the data being withheld and furnish form, fit and function data in lieu thereof, and (iii) concluded that in the absence of such an identification by MDI, the government had unlimited rights in the production unit schematic as it was first produced on May 25, 2004 in the performance of the 66116 Contract. *Id.* at 30-33. Plaintiff's assertion that the court failed to

4

consider BSA's acknowledgment that the schematics contained MDI intellectual property as evidenced by Exhibit 42 to the Esatto Declaration is not only without merit. but in any event, does not change the result. Exhibit 42 is a letter written by Joanna Black of BSA to MDI dated October 12, 2006 which requests intellectual property to conduct an independent failure analysis of the faulty power supplies pursuant to Contract 91308 in order to make a timely delivery of reliable and quality power supplies by August 2007. Nowhere in the letter is there a reference to the production unit schematic produced on May 25, 2004. (*Esatto Decl.*, dated April 23, 2010, Ex. 42.)

Moreover, the court specifically considered plaintiff's argument that "the terms of the NDA supersede the Data Rights Clauses of the 66116 Contract and therefore BSA did not obtain unlimited rights in the production unit control board schematic." *See Memorandum and Order*, dated March 31, 2011, at 31-33. In rejecting that argument, the court determined that

> on April 7, 2004, the parties entered into a 4th Revision to Purchase Order 66116 (i) wherein BSA was to make milestone payments against portions of the work, (ii) which added a Government property clause that clearly stated "[a]ll material and work covered by the progress payments shall become the sole property of the government of the United States," and (iii) which made clear that all prior terms and conditions of the 66116 Purchase Order remained unchanged, including the incorporation of Attachments A and B. Having signed and accepted the revision to Contract 66116, MDI agreed to be bound by the clear language of the contract and the terms and conditions of the incorporated attachments, including the express provision on the face of the contract stating that "in the event of a conflict or inconsistencies between Brookhaven's and [MDI]'s terms and conditions, Brookhaven's terms and conditions shall take precedence." Here, MDI delivered the logic schematic for the power supply pursuant to the 66116 Purchase Order under which BSA contracted for the production of radiation tolerant power supplies.

*Id.* at 32-33. Thus, contrary to plaintiff's assertions, the court fully examined the contracts and the NDAs and concluded that "the terms of the NDA did not supersede the Data Rights Clauses

of the 66116 Contract." *Id.* Likewise, the court specifically considered and rejected plaintiff's argument that the schematic was not specified to be delivered in the purchase order based on the unambiguous language of the 66116 Contract which gave the government unlimited rights in all data first produced in performance of the contract. *Id.* at 33 n.15. Finally, plaintiff's arguments with respect to the second NDA can quickly be disposed of. The production unit schematic was furnished prior to the second NDA, which was entered into between the parties on November 15, 2005, and contrary to plaintiff's assertion, was entered into "as a result of a request by Brookhaven for the actual inductor/capacitor configuration at the output of a power module." *Id.* at 8.

In short, because plaintiff's challenge to the determination that MDI did not possess a trade secret that was misappropriated by BSA in the LVPS production unit control board schematic was fully argued in connection with the underlying motion and addressed in the March 31, 2011 order, plaintiff's motion for reconsideration on this basis is denied.

    **(b)**     **The LVPS Prototype Control Board Schematic**

Plaintiff contends that the court erred in finding that the prototype control board schematic was not entitled to trade secret protection because the court failed to consider that (i) the prototype schematic was not first produced in performance of the 66116 Contract; (ii) the schematic contained MDI trade secrets and was entitled to trade secret protection based on a confidential relationship between the parties prior to the first NDA; and (iii) MDI's standard and supplemental terms and conditions ("T&C") served to protect MDI's trade secrets prior to the first NDA. Plaintiff's position is untenable.

Contrary to plaintiff's assertion, the court fully considered and rejected MDI's arguments

that the prototype schematic was not first produced under the 66116 Contract. *See id.* at 25-30.

A brief outline of the court's previous March 31, 2011 Order with respect to the examination of the parties' contractual agreements, and in particular, the 66116 Contract, bears repeating. As this court found in pertinent part:

> An examination of the four contracts reveals that the documents incorporate terms and conditions from certain specified attachments that bear on the respective rights of the parties to the information and products furnished. . . . Of the latter two contracts, Purchase Order 66116 entered into in 2002, likewise related to the development of LVPS and incorporated Attachment A. . . . Under the express terms of Attachment A, title to items furnished under each of these contracts passed to the Government upon acceptance. In addition to Attachment A, Contracts 66116 and 91038 incorporate an Attachment B which gave the Government unlimited rights in (i) data first produced in the performance of the contract; (ii) form, fit and function data delivered; (iii) data delivered that constitutes manuals and instructional materials; and (iv) all other data delivered under the contract. Attachment B defines unlimited rights as 'the right of Government to use, disclose, reproduce, prepare derivative works, distribute copies to the public, and perform publicly and display publicly, in any manner and for any purpose, and to have or permit others to do so.' Attachment B defines data 'as recorded information, regardless of form or the media on which it may be recorded . . . and includes technical data and computer software'. . . . Under Attachment B, data which MDI considers to be limited rights data, viz. data developed at MDI's expense that embodied trade secrets, could be withheld if MDI 'identif[ied] that data being withheld and furnish form, fit and function data in lieu thereof.' Finally, Purchase Order 66116 expressly provides that 'in the event of a conflict or inconsistencies between Brookhaven's and [MDI's] terms and conditions, Brookhaven's terms and conditions shall take precedence.'

*Id.* at 22-23 (internal citations omitted). In its decision, the court applied the terms and provisions of the contracts between the parties, determined that the prototype schematic was dated January 24, 2002 and therefore on its face was first produced in the performance of the 66116 Contract without an NDA in place, and concluded that under the provisions of Attachment B which applied to the 66116 Contract, BSA had unlimited rights to the schematic. *Id.* at 25-30. As discussed previously, to the extent plaintiff claims that the data was developed at MDI's

7

expense prior to the contract, such data that embodied trade secrets could be withheld if MDI identified such data and furnished form, fit and function data in lieu thereof.

Notwithstanding, the court then specifically considered and rejected plaintiff's arguments that the schematic was entitled to trade secret status because of the existence of a confidential relationship with BSA prior to the first NDA. *Id.* at 26-29. In so doing, the court (i) determined that the contours of the parties' business relationship were defined by the contractual agreements and NDAs which unambiguously specified the conditions under which the information and products furnished would be accorded confidential status; (ii) considered MDI's arguments before it on the underlying motion that the documents were marked proprietary[1], that MDI's quotation contained terms and conditions for proprietary information and that BSA maintained the schematic as confidential, but found no evidence of a separate duty of fidelity or of an implied confidential relationship prior to the first NDA; and (iii) concluded on the basis of the deposition testimony of MDI's most senior executives, Mr. Summer and Mr. Streigl, that "when MDI wanted to protect its trade secrets, it would customarily have a non-disclosure agreement in

---

[1] Plaintiff's reliance on *Airborne Data, Inc. v. United States*, 702 F.2d 1350 (Fed. Cir. 1983) (per curiam), which plaintiff cited to and the undersigned considered in the underlying motion, as support for an implied contract based on the use of a proprietary legend on the document is misplaced. In *Airborne Data*, the federal circuit found an implied-in-fact contract was created when the government used unsolicited information received by a contractor. The federal circuit noted that the "legend" at issue tracked the language of a federal regulation binding the Department of Interior "scrupulously to safeguard the confidentiality" of data provided as part of an unsolicited proposal and held that an implied contract may "arise[] from submission of trade secrets [to a federal agency] under a restrictive legend pursuant to a regulation." 702 F.2d at 1352-53, 1359-60. Thus, the implied obligation was based on federal regulatory restrictions on the use of trade secrets identified as such. Here, the data at issue was not provided as part of an unsolicited proposal, but was provided under the terms of an express contract. *Cf. Atlas Corp. v. United States*, 895 F.2d 745, 754 (Fed. Cir. 1990) ("The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract.").

place prior to the exchange of proprietary information and would only disclose confidential information without one where the information did not contain trade secrets." *Id.* Thus, having found pursuant to the unambiguous terms of the parties' agreements that BSA had an unlimited right in the prototype schematic, there was no basis for the court to consider additional factors in an attempt to create an ambiguity. Finally, the court specifically considered and rejected MDI's argument that the MDI's T&C's protected proprietary information disclosed by MDI prior to the first NDA. *Id.* at 29-30 and n.14.

In summary, having failed to show that the court overlooked matters, made a clear error or committed a manifest injustice, plaintiff's motion for reconsideration with respect to the court's determination that BSA had unlimited rights in the LVPS prototype control board schematic is denied.

### (c) MDI Power Module Schematic

Plaintiff's arguments and supporting documents set forth in its underlying opposition papers that even if BSA had title to the MDI Power Module Schematic, it did not have intellectual property rights to the drawing were specifically considered and rejected in the undersigned's March 31, 2011 Order. In the order, the court determined that the power module schematic dated July 13, 2001 was delivered in the performance of the 44125 Contract without an NDA in place and then addressed "plaintiff's argument that because the schematic was marked proprietary and contained trade secrets, the document was entitled to trade secret protection and therefore BSA was under an obligation to protect the schematic from disclosure to Stefan Simion, a scientist from CERN." *Id.* at 33-34. Applying the unambiguous provisions of the parties' contracts, the court found that under the 44125 Contract, which expressly

9

incorporates Attachment A, "title to items furnished under this Agreement shall pass to the Government upon acceptance, regardless of when or where Brookhaven takes possession." *Id.* Having found that BSA owned the schematic, the court concluded that MDI did not possess a trade secret in the document and therefore BSA's disclosure of the schematic to Dr. Simion was not improper. Hence, because plaintiff's challenge to the determination that MDI did not possess a trade secret that was misappropriated by BSA in the power module schematic was fully argued and considered in the underlying motion, plaintiff's motion for reconsideration on this basis is denied.

**(d)     MDI Circuit Schematics**

Plaintiff asserts that the court (i) overlooked evidence that defendants improperly disclosed proprietary information gleaned from MDI's circuit schematics to Dr. Simion that tainted Dr. Simion's reverse engineering of the LVPS units; and (ii) failed to consider that BSA bore the burden of proof to establish that Dr. Simion's reverse engineering was independent and conducted in a "clean room." Plaintiff's assertion is without merit.

Pursuant to the unambiguous agreements between the parties, BSA had full title to the LVPS units delivered under Contracts 66116 and 91308, which permitted BSA to reverse engineer or have others reverse engineer the units. Contrary to plaintiff's position, the court carefully examined all of the evidence proffered by MDI in support of its arguments that Dr. Simion reverse engineered the LVPS units utilizing MDI trade secrets and concluded that no improper measures were used by Dr. Simion (or defendants) to create the schematics. Moreover, BSA set forth undisputed evidence that Dr. Simion reverse engineered the power supplies delivered to BSA to CERN based solely on his own observations of the units, using

measurements made by Dr. Simion and the Government's personnel at his request, without any reference to MDI's trade secrets or information gleaned from MDI's circuit schematics or other proprietary information of MDI. *Id.* at 34-41. The record evidence, as well as Dr. Simion's deposition testimony with respect to the steps he employed in conducting the reverse engineering of the units, made clear that Dr. Simion's creation of the schematics was made independently without use of or reference to any proprietary MDI intellectual property. *Id*. That is to say, BSA satisfied its burden of proof that Dr Simion operated in a "clean room" to conduct his independent reverse engineering of the LVPS units. In short, because plaintiff's challenge to the determination that Dr. Simion's reverse engineering of the LVPS units was independent and untainted by any reference to MDI's trade secrets was fully argued and considered in connection with the underlying motion and addressed in the March 31, 2011 Order, plaintiff's motion for reconsideration on this basis is denied.

**(e)** **Attachment B**

Plaintiff's argument that the "PSBNP-1287" version of Attachment B attached to the complaint was a mistake and that an earlier "PLB-1096" version should apply to the 66116 Contract was considered and rejected by the court in its March 31, 2011 Order. *See id.* at 4 n. 4 and 22 n.11. After considering plaintiff's arguments that the PLB-1096 version, which accompanied the Request for Quotation for production of radiation tolerant power supplies, applied to the 66116 Contract, the court (i) reviewed the unambiguous terms of the contract; (ii) determined that Purchase Order 66116 specifically states that "Attachment B Intellectual Property Provisions For A Contract With A Small Business or Nonprofit Corporation (Non-Education) For Research, Demonstration or Development Work PSBNP-1287 (Facilities

11

License) with the exception of clauses 1, 2 and 4 are attached hereto and shall apply to this order;" and (iii) concluded that the PSBNP-1287 version of Attachment B properly applied to the 66116 Contract. *Id.* Accordingly, having previously considered and decided this issue in connection with the underlying motion, plaintiff's motion for reconsideration on this basis is denied.

**(2)  MDI's Cross Claim for Breach of Contract**

MDI's arguments that the court failed to address its position that BSA did not incur the costs that form the basis of its alleged damages, viz. damages incurred in connection with the replacement costs of the MDI power supply units, likewise fails. Contrary to MDI's arguments, the court specifically considered MDI's arguments and held that "a review of the submissions of both parties raise triable issues of fact as to whether the LVPS units delivered were nonconforming and/or defective, and if so, whether such nonconformity and/or defect was the cause of BSA's damages, including damages related to BSA's replacement expenditures." Inasmuch as plaintiff's argument was fully argued in connection with its underlying cross-motion and addressed by the court in its March 31, 2011 Order, plaintiff's motion for reconsideration on this basis is denied

**CONCLUSION**

Based on the foregoing reasons, plaintiff's motion for reconsideration is denied.

Dated: Central Islip, New York
       May 18, 2011

**SO ORDERED:**

_____/s/_____
ARLENE ROSARIO LINDSAY
United States Magistrate Judge